IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
) Criminal No. 3:24-CR-17
v. )
) [18 U.S.C. § 1956(h)]
JOHN M. TRABERT, JR. )

## INFORMATION

The United States Attorney charges:

## INTRODUCTION

At all times material to this Information, unless otherwise alleged:

**I.** **Background Concerning Online Scams**

1.       A "romance scam" is a fraud scheme in which fraudsters use fake online profiles and pose as potential paramours to trick other users into sending them money under false pretenses.  Romance scammers often target vulnerable individuals, such as retired widows or widowers.  These schemes commonly unfold entirely online, without the victim ever meeting the perpetrator in person.

2.       Like a romance scam, a "real estate scam" is a scheme in which online fraudsters posing as real estate developers solicit money from unsuspecting individuals to invest in sham real estate development projects.  In these scams, the fraudsters promise individuals a return on their financial investment while knowing that no such real estate development project exists.

3.       "Gold scams" are a form of online fraud in which scammers using fake profiles attempt to convince individuals to send them money to convert a cache of gold into currency.  Like real estate development scammers, gold scammers promise victims a return on their investment once the gold is converted to currency, while knowing that no such cache of gold

exists.  Gold scam fraudsters solicit money from victims under the guise of payment for gold conversion, customs, and currency conversion fees.

4.      Frequently, perpetrators of romance, real estate development, and gold scams direct their victims to send them money vis-à-vis a third-party intermediaries who are, unbeknownst to the victim, money launderers or "money mules".  A money launderer then may (but not always) conduct one or more financial transactions with the funds to make the funds appear legitimate before ultimately forwarding the funds to the fraudster.  As payment for their services, money launderers often retain a portion of the money they launder.

## II.      Background Concerning the Defendant's Knowledge

5.      In and around April 2016, the defendant, JOHN M. TRABERT, JR. (hereafter, "TRABERT"), a resident of Johnstown, Cambria County, Pennsylvania, met an unidentified individual communicating via a telephone number ending in x4003 ("Individual 1") on the WhatsApp communication platform.  WhatsApp is an instant messaging platform that uses end-to-end encryption to mask the identities and location of the platform's users.

6.      Through WhatsApp conversations with Individual 1, TRABERT agreed to accept domestic wire transfers into his various business accounts and transfer the funds to foreign bank accounts at Individual 1's direction.

7.      Initially, Individual 1 represented to TRABERT that the funds TRABERT would receive in his accounts would be payments for legitimate real estate transactions.

8.      However, TRABERT later learned, knew, and deliberately and consciously tried to avoid learning that the monies wired to his accounts were proceeds of some form(s) of illegal activity.

2

9.      On or about November 30, 2016, TRABERT sent the below messages to Individual 1 via WhatsApp:

> Just listen then respond[.]  When money is transferred and then it goes out again in less than 30 days it is viewed as money laundering[.] . . . If I can show what the purpose for the transaction is[][,] there is no problem[.] . . . I have a business . . . so I can legitimately accept and send money for legitimate reasons[.]  I don't know why people send me money and then I send off to other people[,] you included.  I really don't want to know[.]  If it were legitimate[,] they would just send the money directly and there would be no need for me[.]  So there for [sic] I can assume most[,] if not all[,] money sent is no good[.]

10.      Nonetheless, over the next several years, TRABERT remained in communication with Individual 1 via WhatsApp and accepted wire transfers into his accounts and transferred money out of his accounts at Individual 1's direction, while knowing that the money constituted the proceeds of some form of unlawful activity.

11.      Over time, TRABERT and Individual 1 discussed methods of conducting wire transfers to avoid detection of their activity by law enforcement.

12.      For example, in WhatsApp messages exchanged with Individual 1 on January 31, 2020, TRABERT told Individual 1 that for larger transactions, money transferred into his accounts should be held for 72 hours and be transferred out of his accounts in three to four smaller increments, to which Individual 1 asked, "So we can only transfer after 3 days[?]" TRABERT replied, "It's just my suggestion.  If money goes in and then immediately goes out[,] it will appear suspicious."

13.      Similarly, on June 19, 2020, TRABERT sent a WhatsApp message to Individual 1 in which he instructed Individual 1, "If at the bank they start asking questions about me[,] just stop and don't answer any questions and tell them you will get back to them.  We need to keep on the same page."

3

14.     During the conspiracy, on or about October 13, 2020, TRABERT was contacted by a Special Agent with the Federal Bureau of Investigation (FBI) regarding his banking activity.

15.     It was part of the conspiracy that, on or about October 13, 2020, TRABERT met with the FBI agent and told the agent that the bank transactions he conducted with Individual 1 related to legitimate real estate transactions.  During the meeting with the FBI agent, TRABERT received and signed a letter acknowledging that he may be involved in fraudulent activity and/or money laundering:

**U.S. Department of Justice**
**Federal Bureau of Investigation**

### HAND-DELIVERED

Mr./ Mrs./Ms. ___TRABERT___ :

    The Federal Bureau of Investigation, *Charlotte* Division, is providing warning that you, and/or persons you associate with, may be engaged in fraudulent activity that violates state and/or federal criminal laws.  Specifically, your recent transmission or receipt of money via wire transfer, the mail, money service business (such as Western Union or MoneyGram) and/or the shipment of goods may have facilitated the transfer of money from the victims of a crime, to the perpetrators of a fraudulent scheme.

    Some fraudulent schemes involve criminals who falsely represent themselves as someone else, in order to trick victims into sending money via wire transfer to an identified pre-determined account (e.g. your bank account).  The criminal may ask the account holders, such as yourself, to "process payments", "transfer funds", or "re-ship products" to facilitate the movement of money obtained through fraud from victims to the criminals.  These requests may be masqueraded as work from home, secret shopper opportunities, or an online romance.

    **Under certain circumstances, knowingly engaging in a financial transaction that involves funds derived from illegal activity may violate the federal money laundering laws, even if you had no involvement in the underlying criminal activity.**  Under certain circumstances, you may also have a legal obligation to inquire about the source of the funds and may not avoid legal responsibility by being willfully blind to the source of funds.  A knowing and intentional violation of the money laundering laws may result in criminal prosecution and the seizure of property that is found to be tainted by illegal funds.  By agreeing to engage in such transactions, you may also be facilitating a fraudulent scheme and assisting the perpetrators of the scheme.  If you wish to discuss this letter and the contents of this letter further, please contact the agent who served you this letter or your local FBI field office.  The nearest FBI office can also be located online at www.fbi.gov.

    The FBI has documented the delivery of this letter to you.  Along with this letter, the FBI has also explained to you the precise financial transaction(s) in which you engaged that may have involved illegal funds.  Receipt of this letter will be taken into consideration, should you continue to be involved in the type of activities described above.

I signed this letter voluntarily ___ (Initials)     Date: 13 OCT 2020

Recipient Name: _____ (Printed)

_____John Trabent_____ (Signature)

1

4

### III.   Corporations and Accounts Controlled by the Defendant

At all times material to this Information:

16.   TRABERT was the sole owner/operator of the following single-member Pennsylvania limited liability companies:

    a.   Anjnay Real Estate LLC; and

    b.   Trabert Realty LLC.

17.   TRABERT held and controlled the following bank accounts:

    a.   An account ending in x6568 at PennCrest Bank (hereafter, "PennCrest") held in the name of Anjnay Real Estate LLC;

    b.   An account ending in x4989 at Slovenian Savings and Loan (hereafter, "SSL") held in the name of Anjnay Real Estate LLC;

    c.   An account ending in x7555 at Northwest Bank (hereafter "NW Bank") held in the name of Trabert Realty LLC;

    d.   An account ending in x6942 at First Commonwealth Bank (hereafter, "FCB") held in the name of Anjnay Real Estate LLC; and

    e.   An account ending in x6192 at S&T Bank (hereafter, "S&T") held in the name of Anjnay Real Estate LLC.

18.   From in and around January 2020, to in and around March 2022, TRABERT, operating at the direction of and in concert with Individual 1, received funds obtained from victims of various fraud schemes into these accounts, retained a percentage of the funds for himself as proceeds, and transferred the remaining funds to foreign bank accounts provided by Individual 1 while knowing that the funds involved in the transactions were the proceeds of some form of unlawful activity.

## COUNT ONE

The United States Attorney further charges:

19.     Paragraphs 1 through 18 (including their subparagraphs) set forth above, are hereby realleged and incorporated by reference herein, as if fully stated.

20.     From in and around January 2020, to in and around March 2022, in the Western District of Pennsylvania and elsewhere, the defendant, JOHN M. TRABERT, JR., did knowingly combine, conspire, and agree with other persons known and unknown to the United States Attorney to commit money laundering offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit:

a.     To knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved property representing the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved represented the proceeds of some form of unlawful activity and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, contrary to the provisions of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.     To transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds, from a place in the United States to and through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity,

6

that is, wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to the provisions of Title 18, United States Code, Section 1956(a)(2)(B)(i); and

      c.    To knowingly engage and attempt to engage in monetary transactions affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the funds were derived from some form of unlawful activity, contrary to the provisions of Title 18, United States Code, Section 1957.

## OBJECT OF THE CONSPIRACY

      21.    It was the object of the conspiracy that TRABERT receive proceeds from victims of the various types of wire fraud schemes described in ¶¶ 1-4 of this Information into the bank accounts listed in ¶¶ 17(a)-(e) of this Information and transfer said proceeds by bank wire transfers to co-conspirators located within the United States and abroad, while knowing that said proceeds were derived from some form of unlawful activity.  It was further the object of the conspiracy that, for his part, TRABERT, would retain as profit approximately five percent of the fraud proceeds he deposited and transferred.

## MANNER AND MEANS OF THE CONSPIRACY

### I.    The Money Laundering Conspiracy – January 2020 to March 2022

      22.    It was part of the conspiracy that, from in and around January 2020, to in and around March 2022, persons known and unknown to the United States Attorney perpetrated romance scams, real estate investment scams, and gold scams against five victims and that TRABERT conducted financial transactions using proceeds of the fraud schemes at the direction of and in concert with Individual 1, as described below:

### A.      Romance Scam Involving Victim P.S.

23.      In and around January 2021, P.S. was the victim of a romance scam.  In and around January 2021, P.S. met a "friend" online.  This "friend" was actually a fake online profile created by a romance scammer.  After developing a relationship with P.S., the "friend," on various occasions, directed P.S. to send money to Anjnay Real Estate, LLC and Trabert Realty Company:

a.      On or about January 7, 2021, Individual 1, via WhatsApp, shared a photo of a Wells Fargo Bank wire transfer services form indicating that P.S. had sent $180,000 via bank wire transfer from P.S.'s Wells Fargo bank account to TRABERT's FCB account ending in x6942.

b.      On or about January 7, 2021, TRABERT received $180,000 by wire bank transfer sent by P.S. into his FCB account ending in x6942.

c.      On or about January 8, 2021, TRABERT sent $171,000 by wire bank transfer to "Amber Logistics" in Tesano, Accra, Ghana.  TRABERT retained approximately $9,000 in his FCB account ending in x6942 as profit.

d.      On or about January 17, 2021, Individual 1, via WhatsApp, exchanged the following messages with TRABERT:

> Individual 1:   So you have another account that is not Anjnay Reality [*sic*]?
> TRABERT:      Yes
> Individual 1:   Can it take 120k?
> TRABERT:      Is there something wrong with the Anjnay account?
> TRABERT:      Yes my other account can take $120

e.      On or about January 19, 2021, TRABERT, via WhatsApp, provided the name, address, phone number, account number, routing number, and Swift number related to his NW Bank account ending in x7555 to Individual 1.

f.      On or about January 21, 2021, Individual 1, via WhatsApp, shared a photo of a Wells Fargo Bank wire transfer services form indicating that P.S. had sent $120,000 via bank

wire transfer from P.S.'s Wells Fargo bank account to TRABERT's NW Bank account ending in x7555.

g.      On or about January 21, 2021, TRABERT received $120,000 by bank wire transfer sent by P.S. into his NW Bank account ending in x7555.

h.      On or about January 22, 2021, TRABERT transferred $114,012 from his NW Bank account ending in x7555 to his FCB account ending in x6942.

i.      On or about January 28, 2021, TRABERT sent from his NW Bank account ending in x7555 $113,900 by wire bank transfer to "Amber Logistics" in Tesano, Accra, Ghana. TRABERT retained approximately $6,000 in his NW Bank account ending in x7555 as profit.

j.      On or about February 19, 2021, Individual 1, via WhatsApp, shared a photo of a Wells Fargo Bank wire transfer services form indicating that P.S. had sent $45,000 via bank wire transfer from P.S.'s Wells Fargo bank account to TRABERT's FCB account ending in x6942.

k.      On or about February 19, 2021, TRABERT received $45,000 by wire bank transfer sent by P.S. into his FCB account ending in x6942.

l.      On or about February 22, 2021, TRABERT sent from his FCB Account ending in x6942 $42,650 by wire bank transfer to "Amber Logistics" in Tesano, Accra, Ghana. TRABERT retained approximately $2,350 in his FCB account ending in x6942 as profit.

**B.      Real Estate Scam Involving Victim R.W.**

24.      Beginning sometime in 2020, and continuing through in and around August 2021, R.W. was a victim of a real estate investment scam.  Sometime in 2020, while on WhatsApp, R.W. received an unsolicited message from a user named "Sheila."  Over time, R.W. transitioned to conversing with "Sheila" via Facebook.  After a few months, "Sheila" mentioned a real estate development investment opportunity and connected R.W. with another user named "John".

Unbeknownst to R.W., this investment opportunity was a sham.  For the stated purpose of investing in real estate, "John" directed R.W. to transfer money to Anjnay Real Estate:

      a.      On or about April 28, 2021, TRABERT received $25,000 via bank wire transfer from R.W into his FCB account ending in x6942.

      b.      On or about April 29, 2021, Individual 1, via WhatsApp, shared a photo of a Texans Credit Union wire transfer authorization form indicating that R.W. had approved a transfer of $25,000 to Anjnay Real Estate, LLC.  The wire transfer authorization form was dated April 27, 2021.  On or about April 29, 2021, TRABERT, via WhatsApp, responded to the photo saying, "Yes, this one showed up and posted.  I'll be sending to you in a few hours".

      c.      On or about April 29, 2021, TRABERT sent from his FCB Account ending in x6942 $23,750 by wire bank transfer to "Amber Logistics" in Tesano, Accra, Ghana.  TRABERT retained approximately $1,250 in his FCB account ending in x6942 as profit.

      d.      On or about May 5, 2021, Individual 1, via WhatsApp, shared a photo of a Texans Credit Union wire transfer authorization form indicating that R.W. had approved a transfer of $25,000 to Anjnay Real Estate, LLC.  The wire transfer authorization form was dated May 4, 2021.

      e.      On or about May 5, 2021, TRABERT received $25,000 via bank wire transfer from R.W into his FCB account ending in x6942.

      f.      On or about May 6, 2021, TRABERT, via WhatsApp, told Individual 1 that "$25" had arrived in his account.

      g.      On or about May 6, 2021, TRABERT sent from his FCB account ending in x6942 $42,750 by wire bank transfer to "Amber Logistics" in Tesano, Accra, Ghana.  TRABERT retained $1,250 of the money sent by R.W. in his FCB account ending in x6942 as profit.

h.      On or about May 12, 2021, Individual 1, via WhatsApp, shared a photo of a Texans Credit Union wire transfer authorization form indicating that R.W. had approved a transfer of $25,000 to Anjnay Real Estate, LLC.  The wire transfer authorization form was dated May 11, 2021.  TRABERT responded, "the 25 is incoming should post by end of day.  I'll send that to you tomorrow morning."

i.      On or about May 12, 2021, TRABERT received $25,000 via bank wire transfer from R.W into his FCB account ending in x6942.

j.      On or about May 13, 2021, TRABERT sent from his FCB account ending in x6942 $23,750 by wire bank transfer to "Amber Logistics" in Tesano, Accra, Ghana. TRABERT retained approximately $1,250 in his FCB account ending in x6942 as profit.

k.      On or about May 20, 2021, Individual 1, via WhatsApp, shared a photo of a Texans Credit Union wire transfer authorization form indicating that R.W. had approved a transfer of $50,000 to Anjnay Real Estate, LLC.  The wire transfer authorization form was dated May 19, 2021.

l.      On or about May 20, 2021, TRABERT received $50,000 via bank wire transfer from R.W into his FCB account ending in x6942.

m.      On or about May 20, 2021, TRABERT sent from his FCB account ending in x6942 $47,481 by wire bank transfer to "Amber Logistics" in Tesano, Accra, Ghana. TRABERT retained approximately $2,500 in his FCB account ending in x6942 as profit.

**C.      Gold Scam Involving Victim J.B.**

25.      In and around May 2021, J.B. was the victim of a gold scam.  In and around May 2021, J.B. met an individual online who advised that he inherited $3,050,000-worth of gold from his father, but that he was unable to pay sales and customs fees to convert the gold savings

to currency.  The gold inheritance was a sham.  The individual directed J.B. to send $158,000 to pay for sales and customs fees:

        a.      On or about Tuesday, May 18, 2021, TRABERT received $30,300 via bank wire transfer from J.B. into his FCB account ending in x6942.

        b.      On or about May 18, 2021, TRABERT also received $110,000 via bank wire transfer from J.B. into his FCB account ending in x6942.

        c.      On or about May 18, 2021, TRABERT, via WhatsApp, messaged Individual 1 and stated, "The 140 posted."

        d.      On or about May 18, 2021, TRABERT sent from his FCB account ending in x6942 $132,945 by wire bank transfer to "Amber Logistics" in Tesano, Accra, Ghana. TRABERT retained approximately $7,000 in his FCB account ending in x6942 as profit.

        e.      On or about June 10, 2021, Individual 1, via WhatsApp, shared a photo of a Wells Fargo Bank wire transfer authorization form indicating that J.B. had approved a transfer of $18,000 to Anjnay Real Estate, LLC.  The wire transfer authorization form was dated June 10, 2021.  On or about June 11, 2021, TRABERT, via WhatsApp, responded to Individual 1 saying, "Good morning.  I will send this today for you.  Thanks.  Keep them coming".  Individual 1 responded, "Could you send 3000 to the Dubai account and the rest to Amber Logistics".  TRABERT answered, "Yes I can do that.  Can you send me the Dubai bank details?"  Individual 1 responded by providing bank account details for an Emirates NBD bank account ending in x7902 and held in the name of "Zen Software House".

        f.      On or about June 10, 2021, TRABERT received $18,000 via bank wire transfer from J.B. into his FCB account ending in x6942.  The memo line details associated with this bank wire transfer read, "PAYING CUSTOM'S TAX".

g.      On or about June 11, 2021, TRABERT sent from his FCB account ending in x6942 $3,000 by wire bank transfer to "Zen Software House" in Dubai, United Arab Emirates.

h.      On or about June 11, 2021, TRABERT sent $14,000 by wire bank transfer to "Amber Logistics" in Tesano, Accra, Ghana.  TRABERT retained $1,000 in his FCB account ending in x6942 as profit.

### D.      The Closing of TRABERT's FCB Account and TRABERT's Opening of Accounts at S&T Bank and PennCrest Bank

26.     It was further part of the conspiracy that, as banks closed TRABERT's accounts due to suspicion of fraud, TRABERT opened additional bank accounts as necessary to perpetuate the scheme with Individual 1.  It was also part of the conspiracy that TRABERT directed Individual 1 to instruct the victims sending money to TRABERT's accounts to represent to their bank that the money was for real estate.

27.     On or about June 29, 2021, Individual 1, via WhatsApp, messaged TRABERT and advised, "Expecting 70 k from same person", "And 100 from another".

28.     On or about Friday, July 2, 2021, TRABERT, via WhatsApp, messaged Individual 1 and stated, in sum and substance, that he expected that First Commonwealth Bank would soon close his FCB account ending x6942 due to suspicion of fraud, but that the account could be used to receive the expected $70,000 and $100,000 deposits if they were made that day.  Later in the day, on Friday, July 2, 2021, TRABERT, via WhatsApp, advised Individual 1, that he opened a new bank account that would be activated on Tuesday, July 6, 2021.

29.     On or about July 6, 2021, TRABERT, via WhatsApp, sent Individual 1 bank account details for an S&T bank account ending in x6192 and held in the name of "Anjnay Real Estate, LLC", along with a message that read, "Send the $170,000 and I can send out the next day

or even the same day". TRABERT further instructed Individual 1, "Please as always have [the sender] put 'real estate' in the purpose".

30. On or about July 12, 2021, TRABERT, via WhatsApp, advised Individual 1, "First National and First Commonwealth Banks are dead. Use Northwest or S&T. S&T is best and fastest".

31. On or about July 13, 2021, Individual 1, via WhatsApp, sent TRABERT a photo of a message conversation between an unidentified fraud victim and an unidentified fraudster using the alias "Brendan". In the messages, the fraud victim told "Brendan" that his/her credit union received a call from S&T Bank who advised that TRABERT's S&T Bank account was involved in fraud and that S&T Bank would be returning the victim's money to the credit union.

32. Immediately after sending this photo, Individual 1, via WhatsApp, sent TRABERT messages which read, "Do you know anything about this?" and "This is not good".

33. TRABERT, via WhatsApp, later responded to Individual 1, "I just called S&T Bank. My account is not locked. S&T said they never called anyone to return any money. No Money is showing as pending or even trying to be sent." TRABERT asked Individual 1 to send him forms pertaining to wire transfers for $15,000 and approximately $50,000 to show S&T bank. Individual 1 replied, "If I understand, ST bank account is closed because of these two transactions?"

34. On or about July 13, 2021, TRABERT, via WhatsApp, sent a document file named, "Disclosure Document S&T Bank" and asked Individual 1, "can you fill this out for the two transactions so they don't press any charges against me[?] I don't want them to think I did something wrong". Individual 1 answered, "Don't worry, I will handle it. Besides, you didn't

receive the money."  TRABERT countered, "Yes.  Because they contacted the senders and the senders are saying no real estate"… "One said mainly repairs and the other was for a fiancé in Brazil".  Individual 1 asked TRABERT, "How long would it take for us to register a new company and create a new account?"  TRABERT answered, "Will complete by Monday".  Individual 1 asked TRABERT whether an account TRABERT held in the name of "Splash Coatings" was still active, to which TRABERT responded, "No they closed all my accounts"… "At first commonwealth".

35.     On or about July 14, 2021, TRABERT's FCB account ending in x6942 was closed.

36.     On or about July 18, 2021, Individual 1, via WhatsApp, told TRABERT, "Expecting 59k" and asked TRABERT, "What's the plan to move the money quick?"  TRABERT explained that the money could be wired to his NW Bank account, and that he would request the money as a cashier's check, which he would deposit at a new bank and wire out to Individual 1 as soon as possible.  TRABERT further explained, "But we have to have the send[er] say real estate real estate real estate.  It can't be for lovers [*sic*] romances or house additions.  On the slip it has to say real estate and the people sending it have to be on the right page too in case the bank calls them.  Like what happens [*sic*] last time.  The credit union called ST bank.  And they talked to the sender.  We got to protect ourselves."

37.     On or about July 22, 2021, TRABERT, via WhatsApp, advised Individual 1, "The $59,000 came in today."

38.     On or about July 22, 2021, TRABERT received $59,000 via bank wire transfer into his NW Bank account ending in x7555.  That same day, TRABERT withdrew $58,850

from his NW Bank account ending in x7555 via cashier's check payable to "Anjnay Real Estate LLC".

39.     On or about July 22, 2021, TRABERT opened an account ending in x6568 and held in the name of "Anjnay Real Estate LLC" at PennCrest Bank.  TRABERT initially funded this account with the $58,850 cashier's check drawn from his NW Bank account ending in x7555.

40.     On or about July 23, 2021, TRABERT sent $57,580 by wire bank transfer to "Zen Software House" in Dubai, United Arab Emirates.

**E.     Romance Scam Involving Victim K.N.**

41.     From in and around 2017, through in and around November 2021, K.N. was the victim of a romance scam.  Sometime in 2017, victim K.N. met an individual with the profile name "Sharon Wooten" on the online dating website "Farmer's Only".  "Wooten" purported to be a woman in her thirties who lived with her sister in Kannapolis, North Carolina.  "Wooten" told K.N. that her father, who she claimed was a wealthy businessman from California, recently passed away and that she stood to inherit three homes in San Jose, California and $8,000,000-worth of gold upon reaching her 40th birthday.  Over time, K.N.'s interactions shifted from flirtatious conversations to discussion of "Wooten's" financial troubles and K.N. began to communicate with "Wooten" via text messaging.  "Wooten" eventually directed K.N. to send her money for financial support:

a.     On or about August 9, 2021, TRABERT received two $50,000 checks, one dated July 2, 2021 and one dated August 2, 2021, issued by K.N.  That same day, TRABERT deposited the two $50,000 checks issued by K.N. into his PennCrest bank account ending in x6568.

b.     On or about August 11, 2021, TRABERT, via WhatsApp, told Individual 1 regarding the two $50,000 checks, "Hurray it shows available.  I'll go in shortly to wire to NW

then I'll try and send from NW to Dubai."  Individual 1 acknowledged and further advised TRABERT, "Also, a new 50k check will arrive today or tomorrow so you can look for it." TRABERT sought clarification, "This is in addition to the 2 I have now?"  Individual 1 replied, "Yes", "So, in total 150k".  TRABERT later told Individual 1 to have subsequent checks mailed to his residence and TRABERT provided his home address to Individual 1.

        c.      However, PennCrest Bank had placed a hold on TRABERT's account ending in x6568 due to the large dollar-value of the two checks.

        d.      On or about August 12, 2021, Individual 1, via WhatsApp, told TRABERT, "If we want to keep this business, we need a new bank Asap".  TRABERT responded, "I can't take checks any more [*sic*].  We lost PNC bank because someone put a stop payment on it And [*sic*] now this.  I will probably loose [*sic*] this bank now too"… "I don't want to have anything to do with anything illegal.  I'm not saying anything done was illegal but I just want everything to be proper".  TRABERT told Individual 1 that he would work on opening an account at a new bank and added, "Just make sure that if questioned the sender says real estate and not gold or anything else. Ok".

        e.      On or about August 16, 2021, TRABERT opened an account ending in x4989 in the name of Anjnay Real Estate LLC at Slovenian Savings and Loan.  That same date, TRABERT deposited a $50,000 check from K.N., dated July 2, 2021, into his SSL account ending in x4989.

        f.      On or about August 16, 2021, TRABERT sent $48,000 by wire bank transfer from his SSL account ending in x4989 to his NW bank account ending in x7555.

        g.      On or about August 17, 2021, TRABERT received the $48,000 bank wire transfer he sent from his SSL account ending in x4989 into his NW Bank account ending in x7555.

h.      On or about August 18, 2021, TRABERT sent $47,400 from his NW Bank account ending in x7555 to "Zen Software House" in Dubai, United Arab Emirates by bank wire transfer.  TRABERT retained approximately $2,500 as profit.

i.      On or about August 18, 2021, pursuant to a stop payment request, PennCrest Bank canceled the $50,000 check dated July 2, 2021 issued by K.N.  PennCrest Bank continued to keep a hold on TRABERT's PennCrest account ending in x6568.

j.      On or about August 23, 2021, Individual 1, via WhatsApp, told TRABERT, "In case Pencrest [*sic*] is stupid [enough] to go to the law enforcement with this, say exactly what I told you"… "And no Names, just use company names"… "Amber, Zen Software house etc" … "In case they ask where the wires go to".  TRABERT responded, "Yes I am loyal to you". Individual 1 responded, "I will do the same in case anyone tries to come at me from here".

k.      On or about August 30, 2021, Individual 1, via WhatsApp, told TRABERT, "We are moving money for people, and you know we have to beat the system to look good. Moving money for you and I know the state frawns [*sic*] on it"… "That's why I'm doing everything possible for us to stay out of trouble,"… "You just have to listen to and follow my lead and we will be fine".

l.      On or about September 2, 2021, pursuant to a federal warrant, the United States Secret Service seized $50,000 from TRABERT's PennCrest account ending in x6568.  The bank closed the account that same day.

m.      On or about November 10, 2021, TRABERT received a $40,000 check written by K.N. via DHL delivery.

n.      On November 18, 2021, TRABERT deposited the $40,000 check written by K.N. into his SSL account ending in x4989.  However, on November 23, 2021, SSL canceled the deposit due to insufficient funds.

**F.      Romance Scam Involving Victim R.T.**

42.      From in and around July 2021, continuing through in and around December 2021, R.T. was the victim of a romance scam.  Sometime in July 2021, R.T. met an individual named "Robert Lucas Moore" on the online dating website eHarmony.  In conversations, "Moore" told R.T. that he worked for the United Nations Security Council and lived in the United States, Yemen, and Germany.  Over time, "Moore" directed R.T. to send him money through intermediary companies such as "Midwest Capital Investment Group" ("MCIG"):

a.      On or about November 17, 2021, Individual 1, via WhatsApp, sent TRABERT a photo of a Navy Federal Credit Union cashier's check for $49,990 remitted by R.T. and made payable to "Midwest Capital Investment Group LLC".

b.      On or about November 22, 2021, TRABERT received $47,240 via bank wire transfer from MCIG into his SSL account ending in x4989.

c.      On or about November 23, 2021, due to the canceled check from K.N. described above, SSL placed a hold on TRABERT's SSL account ending in x4989.

d.      On or about December 2, 2021, TRABERT, via WhatsApp, told Individual 1, "The bank here is asking for a letter from the person [R.T.] who send [*sic*] funds to [MCIG]. Why did they send to [(Name Redacted)] and not directly to me?  I told them I did not want to this real estate/BTC business anymore and I was passing it along to [(Name Redacted)].  So you were sending funds to [(Name Redacted)] then on to me to see if [(Name Redacted)] could be trusted. Also state that this is for a legitimate real estate transaction".

19

e.     On or about December 2, 2021, Individual 1, via WhatsApp, sent TRABERT the below document, which TRABERT provided to SSL on or about December 3, 2021:



f.     On or about December 13, 2021, the United States Secret Service seized $47,240.50 from TRABERT's SSL account ending in x4989.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATIONS

The United States hereby gives notice to the defendant charged in Count One that, upon his conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982, of all property involved in each offense of conviction in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, and all property traceable to such property, including, but not limited to, the following:

a.     $50,000 in U.S. currency seized on September 2, 2021, from PennCrest bank account ending in x6568;

b.     $47,240.50 in U.S. currency seized on December 13, 2021, from Slovenian Savings and Loan bank account ending in x4989.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant JOHN M. TRABERT, JR. up to the value of the forfeitable property described above.

ERIC G. OLSHAN
United States Attorney
IL ID No. 6290382

ARNOLD P. BERNARD, JR.
Assistant United States Attorney
PA ID No. 313734

23